I just want to welcome Judge Angel Kelly to the bench. We appreciate her joining us for the hearings this morning. And then also, Judge Lynch is with us remotely, as is evident, and will be able to participate that way. Judge Lynch, if there's any questions at the end of any proceeding, and I haven't gotten to, I'll make sure to ask. But you should feel free to participate as you wish. Thank you. Today's cases will be called, as previously announced, and the times will be as allotted to counsel. The first case today is case number 22-1421, United States v. Raphael Pina-Nieves. Attorney Weinberg, please come to the podium and introduce yourself. Thank you very much. Good morning, Your Honors. May I reserve two minutes? You may. My name is Martin Weinberg, and I'm representing the appellant, Mr. Pina-Nieves. The district judge made two related errors of law which resulted in denial of the appellant's right to a fair trial. First, in its evidentiary decision to allow the statement of counsel to be admitted to show consciousness of guilt, and then second, in not addressing either at the time of that evidentiary decision or at some meaningful time thereafter the consequences of the admission of counsel's statement on the defendant's underlying right to effective counsel and to a conflict-free counsel, at minimum without any inquiry as to whether or not he would waive those rights. The first error, the evidentiary error, was to extract an isolated part of a sentence in a memorandum of law filed in a spy-in-the-camp motion to dismiss, and despite the attorney's statement, first in writing, that his intention was merely to repeat or rephrase the government's discovery, which contained a verbatim quote from an informant, but his intention was not to convey a statement of the defendant. He said that in his reply brief filed the day before the court made a ruling at Appendix 63. He repeated that in open court just before the admission of the statement at Appendix 98 and 100. This had two important legal consequences. The Federal Rule of Evidence 801 requires for a statement that it be intended to be an assertion by the declarant of fact rather than a summary or a part of a legal argument. And second, if the statement was not made by the defendant to counsel for disclosure to the court and government, then it would have no capacity or potential to be the predicate for an inference of a consciousness of guilt. The context matters. This was the eve before a hotly contested trial. There would be no reason for a competent counsel to make such a disclosure to the government in court of what would probably be a privileged communication if, in fact, it emanated from the defendant. But at minimum, given Judge Pesos's finding, you would have to infer that the declarant, the lawyer, intended for this statement to be a disclosure by his client that his client so distrusted the defense that was about to be presented just two days later and a disclosure to the public as well as the government that his client wanted to plea bargain the case. Counsel, can I jump in with two questions? One is the disclosure of this information, that was also just before trial, correct? That was the Friday before the Monday trial? Yes. And that was also 14 months after the government had been notified of it by the agent and the informant? Yes. In the original pleading, the motion to dismiss, they were quoting an FBI agent, quoting an informant who was relying on third parties. There was multiple hearsay on an FBI 302 dated October 2, 2020, or 14 months prior to the trial. So could you do me a favor and address what was the impact of that late disclosure to the defendant and what was the prejudice to your client for the admission of that statement? Well, the prejudice to my client was pervasive and intense. I mean, the jury was being told out of the mouth of the trial lawyer, given the judicial notice and the mechanism whereby counsel's statement was provided to the jury with even the date that counsel had said that to the court, just two days before the start of trial. The jury was told that the defendant distrusted his defense, was resigned to losing the trial, resigned to go into jail, and engaged in plea bargaining since the part of the statement that was admitted talked about the advantage to the government in terms of its plea bargaining position. The government used this statement as the centerpiece of its prosecution. It started its evidentiary presentation by seeking judicial notice, first piece of evidence, started its opening summation, and then most damaging during the rebuttal, thanked the defense for having provided such incriminating evidence to the government that they weren't relying on a government witness saying the defendant said something. They were relying on the defendant's own trial counsel. But even worse, they then argued that you heard from counsel all of the defense theories, which is just a way of saying that the defendant was arguing reasonable doubt, that he was proven to have been in constructive possession of the weapons and to have been aware of the modification of the weapon. And then they discredited all of the defendant's arguments by saying, essentially, compare that to what the same trial lawyer told you in the judicial notice statement. The way you've presented this is non—the error you're now talking about, as opposed to the Millman— is it Millman? The exclusion of the evidence concerning Millman? Am I saying the name right? Yes. Yeah. The error that you're now describing is a non-constitutional error as you presented it to us? Yes. Yeah. So you've just described the prejudice in the sense like how it could have been harmful. But for harmless error purposes, as I understand it, that's not where we stop the inquiry. We also have to make an assessment of whether, notwithstanding that it was obviously prejudicial insofar it was error, because it's not the kind of thing you'd want the jury to hear, whether the evidence was so overwhelmingly strong, at least with respect to one if not both counts, that nonetheless we deem it to be a harmless error. I would contest, Your Honor—excuse me for having interrupted, Your Honor— that it's a harmless beyond a reasonable doubt standard because the consequence of the evidentiary error was to deprive the defendant of conflict-free counsel. There were certainly plausible alternative defense alternatives, such as calling Mr. Raboio as the defense witness. He would be the only witness— Well, that's I guess what I was asking. In your briefing, you portrayed the Millman error as a constitutional error. Yes. But I misunderstood it. Although you make an ineffective assistance of counsel challenge separately, I didn't understand the evidentiary error that you just described to be described as a constitutional error in its own right. Well, if it wasn't explicit, it was hopefully implicit, Your Honor, perhaps. Counsel, if I may, I read it exactly the same way that Judge Barron did, that you accepted the nonconstitutional harmless error doctrine. That doesn't necessarily hurt you. So let's assume that we could find, as to the knowledge that the Glock pistol had been modified, that this was not harmless error. So let's go back to the other count, the count where your client was convicted of the knowing possession as a felon of firearms and ammunition. So let's put aside the so-called admission. Let's assume that that was never admitted into evidence, which meant the government could not have made the use of it, that it did. There is nonetheless wiretap evidence that, I mean, I can read it to you, but you know the transcript as well as I do. And it basically has the defendant saying, those are my weapons in the safe. I know they're there. And when various proposals are given to him as to what to do with the weapons, he directs quite clearly not to be given to certain people, which shows an intention for dominion and control. So the government's basic argument is, look, every element of the crime was proven out of your client's own mouth as to that count of conviction. So with that background, assuming the error had never happened, why isn't the government correct that the evidence of guilt was so overwhelming that we would have to find that the error was harmless? First, Your Honor, the government itself did not believe the evidence to be so overwhelming. Otherwise, they wouldn't have requested the admission of the attorney's statements. Well, we don't look at it that way. You know we don't look at it that way. We look at it in hindsight. That's how we do the harmless error analysis. The fact that the government put in something that was prejudicial isn't a reason to conclude that it was harmless. And two is you have to think about the credibility of defense counsel arguing reasonable doubt. So the reasonable doubt comes from the very same transcript that Your Honor relied on. Mr. Rinder, pardon me, but you start with the assumption that the error was not made, that all of this was excluded, okay, and the government could not make the arguments it did. Now, given the overwhelming nature of the government's evidence, how is it we can say that there was no harmless error here? Because the defense to the possession of the weapons, putting aside knowledge of the modification, was that the defendant did not intend to exercise dominion and control. And in the very same February 6th tape, he is saying, I can't take it out either. It is unlegitimate. Yes, but the very tape shows him giving directions as to what is done. He then, during the FBI's agent search of the house, he contacts the company, the security company, and he asks specifically about whether the agents have gotten to the area where the guns are being kept. Again, another instance of exercising dominion and control. I would argue, Your Honor, that it demonstrated knowledge, that he felt that he could not take possession, constructive possession. Even when he says in that tape, they're my guns? Yes, because, although they may have been ownership of the guns, he knew as a felon, they used the word, you know, Quaker loco. They were perhaps unregistered. He's consistently saying, I don't, I can't take it out either. Well, but I can't take it out means if he did, it would be really problematic for him. That's not saying I don't have dominion and control. And when they say, can I do something? He says, no, don't do that. What position is he in to say no if they're not his guns, as he said? And I think that the evidence would show that he had an interest in the safe, an interest in some of the contents of the safe, but that the court, the law requires that he intend to exercise dominion and control. Can I ask one? I couldn't tell from your briefing, and you're not saying it now in argument, but you may intend to also be making it. Does the timing of that conversation relative to the charge in the indictment have any relevance? In other words, at what point in time was the jury instructed he needed to have dominion and control over the weapons in the safe? The jury was instructed at or about April 1, which was almost two months after the conversation. And again, there was no evidence when he last been there, no evidence. And was that latter argument put in play in his defense? Yes, it was argued strongly that the tape was for or for the evidence. The court denied that evidentiary objection. But there was an argument that the February 6 conversation. I mean, was that argued to the jury that the passage of time between the February 6 conversation and whatever date the instruction had given suggested that whatever dominion and control he might have had on February 6, you couldn't infer that he would have had it on April? The argument was made that he didn't intend to have dominion and control in April and that no one could say when he'd last been there. No one could say that he was even there after the gunshot. And then last question is on the harmless error standard, one puzzle I had in thinking about the case is that if the first error that you identified is non-constitutional, and assuming that we read your brief, too, and we were correct to read it as I had read it, maybe I'm wrong, that it was a non-constitutional error. The Millman error you portray as a constitutional error, which it seems like if it was error, it was a constitutional error. That error, if it was error, would also bear on the question of knowledge of the possession of the gun and the dominion and control points you're making. What are we supposed to do? And do you have a – I mean, I know what your view is likely to be, but do you have any authority that would support the view that when we have two errors, one of which is non-constitutional and one of which is constitutional, and the cumulative effect of them would be to potentially cause more prejudice than either one alone would, do we apply the constitutional harmless error standard or the non-constitutional harmless error standard? When you're also dealing whether or not it was properly stated or not. Well, put aside the ineffective assistance and the conflict point for a second. Then we would argue that in this case the man didn't get a fair trial because of the aggregate of the evidentiary. And what I'm asking is when there's an aggregate of evidentiary errors, one of which is constitutional, one of which is non-constitutional, what harmless error am I supposed to apply to do the aggregate analysis? Well, I think the answer suggested by the question, certainly the higher standard, because we're dealing with the ultimate issue of whether the evidentiary errors cumulatively compromise the defendant's right to a fair trial, and therefore the higher standard should be imposed on the government to prove beyond a reasonable doubt that there was harmlessness rather than harm to counsel's credibility as well as to the ability to argue the reasonable doubts that he simply, you know, wasn't there, that we should have been able to argue he was in Miami, that the court instructed the jury that that was irrelevant. Okay, I got it. Thank you. You also have two minutes on rebuttal. Thank you. Any further questions from my colleague? Go ahead, Judge Lynch. I'm sorry, Mr. Weinberg, why don't you come back? Go ahead, Judge Lynch. Mr. Weinberg, in reply to Judge Barron's question, again, I go back to your briefing. I don't believe that you actually made the argument, and you certainly didn't support it with authority. And I'm kind of, I don't know whether it's appropriate for us to be making law about aggregate error when it actually hasn't been briefed to us. So let me go back to the non-constitutional harmless error. I thought you were making an argument that there, although you didn't use the term spillover prejudice, that the evidence, the exclusion of the evidence that from the realtor that this guy was basically in Miami also went to count one, the firearms possession charge. That's what I read you brief as arguing. And so before we lose the point, I just wanted to give you a minute to address that. Yes, Your Honor. And it was mostly the court striking his testimony and instructing the jury that it was irrelevant would have a spillover effect on all of the defense arguments that the fact that Mr. Pena Neves did not reside at the house, that nobody could put him at the house at a time after the weapons were purchased, no one even had the date of the date when the guns came into the house, that the jury was really denied the right to show that this man was largely a thousand miles away, which makes it less likely that he's actively exercising dominion and control on April 1, which was the date of the alleged offense. Okay, but one more question. You were asked about that period of time between February 7th and the raid in April when the government took possession. Did the Milliman evidence specify anything about that period of time? Yes, Your Honor. There was an offer of proof once the evidence of the past relationship to Florida was stricken that Mr. Milliman would testify that Mr. Pena Neves was purchasing a home in Miami just before 2020 and then purchasing another one in 2021. So clearly the offer of proof encompassed the April 1, 2020 period. But the fact that he's buying a home in Miami doesn't mean that he had, he or his henchmen had no control in that February to April period. You can have control when you're absent, but it makes it less likely, and again, this is not a Rule 29 argument. It's a harmless error argument with the burden on the government. And if I can just say there's one more means of finding remedy, which is when you show that the conflicted counsel, you know, had a conflict, then the First Circuit standard is lower than, it was different than ineffectiveness. It's a separate standard than harmless error, and maybe that's why we didn't argue harmless error. Can I go back? You drew a distinction between the exclusion of the Milliman evidence and the fact that the court instructed the jury that it was irrelevant. What precisely was irrelevant? The court, when he struck the evidence, and I can find the specific reference in the transcript, instructed the jury that Mr. Milliman's testimony was irrelevant and should be disregarded. Prevented the defendant from putting on further evidence that would have been more concurrent with the time period that the charges were brought, the 2019. Okay. I've got it. Thank you. Thank you very much. If I could say just one other thing. Well, before you judge Kelly, I know I have a question. It was addressed. Okay, great. Thank you. Which is that there is a separate standard when there's conflict of counsel that has not been addressed through a waiver, and that's whether there was any alternative plausible strategy. Here there was Mr. Raboio to be a witness, and whether that adversely affected his performance. It certainly did. He was, you know, condemned. Was this argument made in objecting to the inclusion of the statement? Yes. It was made as a separate, stand-alone issue, and perhaps the reason why we didn't focus on it, I think it's the Harrington test. If that's not in your brief, I'll say it, right? What's in the brief is the reliance on PANZO and other cases of this court were in the absence of a waiver and a showing of a waiver. That's all in the context of your ineffective assistance of counsel claim, correct? Well, it's in the consequence of what the standard is. Okay. Thank you. I see. I got it. Thank you. Prejudice on the ineffective assistance of counsel claim. Yes. Yeah, thank you. Okay. I got it. I got it. I got it. I got it. Attorney Barber, please introduce yourself and begin. May it please the court, Kevin Barber for the United States. I'd like to begin, if I could, to return to the discussion that the court was having with my friend, Mr. Weinberg, about the harmlessness issue. I do think that the evidence in this case was so overwhelming, particularly the smoking gun wiretap evidence that Judge Lynch referred to, that any error here was harmless, and I would say that any error was harmless with respect to both counts of conviction. Just for our purposes first, just address the non-machine gun count. Sure, just the possession of the convicted felon. So for that count, you have the fact that in the February 6th wiretap phone call, Mr. Pina explicitly claimed possession of firearms and ammunition, and then in the April 1st FBI search of his home, the weapon. No, just so I understand it, is when you say, did you say possession and control or you said possession? Well, it was a constructive possession theory, so it was dominion and control. And so is the word you're focusing on there when he says my guns, is that what you mean by that? Yes, I think that's the key part of the call, and then you have the fact. And I guess what I understood, Mr. Weinberg, the argument was that that certainly is ownership, but is that the same as dominion and control? No, it's not legally the same. Okay, so then that word doesn't itself solve all the elements. It doesn't, but ownership is obviously very strong evidence of constructive possession. And then if you look at the rest of the call, as the court was discussing with my friend, then Mr. Pina is discussing, well, what should be done with the guns? If I'm just breaking it down, just help me with this point. The question, as I understand it, is we're supposed to ask, could a fair jury, given this evidence, return a not guilty verdict? Putting aside the error, just look at this. Could any fair-minded jury say you're not guilty? Yes. So you can if all the elements aren't proven, right? Of course. And so what we've got is proof of ownership, which is very strong evidence, certainly enough to infer dominion and control probably in this context, but it doesn't itself resolve it. So then you're rightly saying, but there are other statements in the call that go to dominion and control. But, of course, dominion and control, unlike ownership, might be a time-bounded matter. So whatever you had in terms of dominion and control in February might not be true in April. So if I understand the argument, which you try and address in a footnote in your brief, what are we to do about that gap? As I understand it in your brief, your answer was the indictment didn't require a finding that it be in April because it just says on or about. Did the instruction clearly say that the jury could find the dominion and control as of February? I think the instruction, I'm not sure, Judge Barron, but I think the instruction said on or about as well. And the footnote you're referring to— So does on or about mean February compared to April 21st? In other words, what we're trying to figure out is could a jury on this evidence have enough of a doubt that then all of the prejudice that was described in Mr. Weinberg comes in? And I guess I'm just, as I'm hearing you, I'm starting to wonder whether, well, maybe a fair-minded jury could because they would know ownership, but they might have a doubt about possession or control, and that might be time-bound. Yes, Your Honor. So I think you might be on to something if you set aside the cases that we cite in that footnote in our brief, which I think pretty clearly established that a gap of, say, six weeks to two months is enough when you have on or about language in an indictment. Even if you set that aside, I think you would be on to something if the only evidence we had here were the February 6th phone call because then you could say, you know, But here the jury was confronted with evidence, affirmative evidence, that nothing had changed. So you had Mr. Pina's behavior on the morning of the search. You had the search itself, which actually turned up guns consistent with his description on the phone. So it wasn't a case where the only evidence came from February, and then the indictment charged a markedly different jury. Well, the fact that he's nervous, I mean, I think it would be the surprising person who would be so convinced that a jury wouldn't believe there was possession and control on these facts that I wouldn't be nervous about what was happening. That's different than whether a juror could reasonably think, well, he was nervous, but that doesn't mean that's proof beyond a reasonable doubt that he had dominion and control. And I guess the other piece of that is doesn't the exclusion of the Millman evidence then contribute to the concern, since that was part of his defense about why he wouldn't have had dominion and control at the relevant time? So I don't think that the Millman exclusion was prejudicial, even if that were erroneous. I don't think it was. Mr. Weinberg himself, at footnote 30 of his brief, has conceded that the Millman testimony was irrelevant, at least in large part. But if we grant for the moment that there was error in excluding Millman as a witness, I think that would have been particularly non-prejudicial error because all of Millman's testimony went to issues that the government never disputed. The point of Millman's testimony was to show that Pina did not live in the house in Coglis where the guns were found. That point had already been thoroughly established by the time Millman came up to testify. That goes also to our cumulativeness argument, but I think it's very relevant to the harmlessness inquiry as well. So I think it would be remarkable to conclude that the exclusion of a witness who was going to testify to matters that the government never disputed was prejudicial. I also think, just to clarify from the discussion before, I still think we're dealing with a non-constitutional error harmlessness standard for the Millman issue. Mr. Pina's opening brief makes this reference to the right to present a complete defense. I don't think that's implicated here. This Court and the Supreme Court have made quite clear that that doctrine is reserved for egregious cases. Here, as I just said, my friend concedes that the Millman testimony was irrelevant, at least in large part. If you look at footnote 30 of his opening brief. So I don't think you could have a plausible constitutional right to present a complete defense argument here. I think we're still a non-constitutional harmless error world with respect to the Millman testimony. And I think because it was about a non-contested issue, that was particularly harmless. I don't think that Pina's physical proximity to the contraband here was an issue at all in the government's theory. So the fact that Mr. Pina may have lived in Miami in particular was not an important factor. So I think that contributes to the fact that Millman's testimony, the exclusion of it, would have been harmless, even if that was erroneous. But again, the government's position is that it was not. Now, it may be helpful if I return to the statement from the motion to dismiss the indictment, which the government brought in. I think what we haven't heard from Mr. Pina in his briefs and today is a plausible argument for why Rule 801 did not apply on its face here. I think Rule 801, D2, C, and D both apply and bring this evidence in. Mr. Weinberg talked about the prejudice that was posed by admitting this evidence at trial. But, you know, no Rule 403 objection was ever lodged at trial, which I think is a good indication that this prejudice argument is quite weak. It wasn't a major part of the government's case, even though it did come in first, because it was a different kind of evidence than the testimonial evidence and the physical evidence we were dealing with. And the statement made a relatively or played a small role during the government's closing argument. So I don't think even if it was error, that would be prejudicial either. But, counsel, didn't he throughout the trial and prior to the commencement of trial argue that this was prejudicial to his client? So he may not have stated that this was a 403 objection, but he did on multiple occasions throughout argue that it was prejudicial. Yes, Judge Kelly, but as this court has observed many times, all good evidence is prejudicial. So I don't think that furnishes a ground for error. The question is, was there some kind of unfair prejudice presented? So let me ask you this question. Sure. If the government did not introduce the evidence in the way that it did, would it have been able to introduce this evidence otherwise? Would that have required a witness to testify? Yes. So the mechanism that was used here was judicial notice. Right. That's also how Mr. Pena himself had the FBI special agent's report brought in against the government. So this was done in both directions here. In both times it was judicial notice. But let's focus on this particular statement because there are multiple layers of hearsay that were never addressed. Is that right? It's correct that the statement relies on hearsay. We explained in our brief why that doesn't matter to the admissibility because it was a party. Explain to me now, please. Sure. So it's a party-opponent admission, and that's defined by Rule 801 categorically as non-hearsay. And so if you look at the advisory committee notes, it explains why. But how does that allow the government to leap over the four, five, six other layers of hearsay? Right. So normally under Rule 805, that's a concern. That's like hearsay within hearsay. The reason why that rule doesn't apply here is because, as I said, 801 categorically defines a party-opponent admission as non-hearsay. So there's no hearsay within hearsay technically under the rules. And the reason for this, I think that's what your Honor is more interested in, is sort of the policy rationale for that rule. And I think the policy rationale and the reason why the advisory committee said that party-opponent admissions should be treated more liberally in this respect without requiring indicia of reliability is that if a party makes a statement that is later sort of used against it, as the statement was here, then we can be more trusting that the party has made sure that it's reliable. But maybe you're just skipping a step that I'm not following. The party-opponent admission here is coming in only through hearsay. It's not that the party-opponent statement's hearsay. It's hearsay about it having been said, right? No. So this is an important point, Chief Judge Barron. The relevant party-opponent admission here is not Mr. Pina's statements on the yacht during that meeting where he expressed his resignation going to prison. The relevant party-opponent admission is the statement from the motion to dismiss the indictment. Now, that relied on information that was hearsay because it relies on information that the government received from an informant. But then that does not go to Mr. Weinberg's point about the question of whether when it was made in the indictment, it was intended to be an admission? Well, Mr. Weinberg's argument, as I take it, is that the attorneys for Mr. Pina were simply repeating a statement. Or paraphrasing a statement. I don't think that's true. This was a statement that was made in the lawyer's own words. In adjudicating this dispute between the two of you, that sounds to me implicitly you're conceding that if his characterization is right, then it was error to admit it, correct? No. No, Your Honor. I'm not conceding that. I don't think there's any exception for repetitions or paraphrasing in the rules. I think it depends on context, though. If you repeat a statement in an uncritical way that indicates that you think it's true, then I don't see any reason why that shouldn't be admissible. But if I repeat it in a way that doesn't indicate that I think it's true, I just repeat it. Then perhaps you could have an argument that under the rule it doesn't qualify as a statement. I know you can have an argument, but is the government's position that in that instance it was error to admit? If you were simply repeating the statement without any indication that it were true, it may be admissible, but it wouldn't be necessarily relevant if there wasn't any reason to believe that you would admit it. Would it be admissible under the party opponent exception? I think in theory, but I think it depends on the purpose for which it was offered. So here, for example, Judge Barron, this was relevant to consciousness of guilt because the way in which the statement was made, and again, I would insist that this was not like a repetition or paraphrasing. How do we adjudicate this question of characterization, which I take it you're saying might bear on whether there was error or at least how it could be used? And it certainly wasn't used in the more limited way that you're suggesting it might only be able to be used if we characterize it Mr. Weinberg's way. So what is the standard I'm supposed to use to adjudicate between those two characterizations? Well, I think we're on abusive discretion review. We're on a particularly deferential form of abusive discretion review if you follow the Harris and the Valencia case that we cite in our brief. And so I think under that standard... Was there a finding by the district court here that it was admitted because of the characterization you're suggesting? I think it was, yes, I mean, at least implicit if not explicit in the part of the district court's opinion where he ruled it admissible under Rule 801. The important thing here is that the statement was made in a context in which PINA was necessarily or PINA's attorneys were necessarily representing it to be true that he was resigned to going to prison. Because the way that the statement... Counsel, if I may. Yes. I'm going back to Mr. Weinberg's argument that counsel in moving to dismiss the indictment for what he viewed or argued was government misconduct, made a statement in furtherance of that argument. The way you have taken and the government has chosen to take that statement suggests that counsel meant to advance his client's case in these other ways. But I just don't understand it that way. I don't see why counsel would have had any incentive to get himself into the pickle that the government, with its subsequent use of this, well beyond defending against the accusation of impropriety. I just don't see it as an admission. And I'm not certain that the context argument helps you at all. I tend to think it harms you. Judge Lynch? What incentive would an experienced criminal trial lawyer in Puerto Rico have to make a statement that would be read as an admission of guilt by his client? Judge Lynch, I take all those points. I do think that the context helps us here to zoom out a little bit. The context here was this was the eve of trial. I think this was kind of a hail Mary, this motion to dismiss the indictment, because as we've been discussing, there was the smoking gun wiretap evidence, the other very strong evidence of guilt. So there is a motion to dismiss the indictment. In order to give that claim any bite, the Sixth Amendment claim that was being lodged there, Mr. Pina needed to show prejudice. And his theory of prejudice was that the government's receipt of this information from the informant gave it an advantage in plea negotiations. As we explained in our brief, there's only an advantage in plea negotiations if it's true that he's resigned to going to prison. Now, I don't think that Mr. Pina's attorneys intended to make any admission about guilt. Excuse me, why is that? People take bargaining postures all the time. They do a little puffing along the way. That's certainly true, Judge Lynch. But I think if any party knows the truth about its opposing party's mindset or confidence level in any negotiation, it's going to be an advantage. And that was his theory of prejudice here. And so I don't think that there was intention by his lawyers to make any admission. I think it simply backfired on them in the exact same way that... No, no, no, no, no. The government is the one who then chose to characterize this statement made in one context as an admission to be used in another context. And the government used it to a fairly well. And the government had a strong case. So I don't quite understand why the government chose to characterize this as an admission and then use it in the way it did. You had a wiretap. Certainly, Your Honor, I certainly take your point. I think going back to Judge Barron's point earlier, we have to kind of look at this in hindsight. And I think, you know, from the appellate perspective, it may be easy to say, well, the government had no reason to do this. But I think the government wanted to put on the strongest case it could. And again, it was confronted with this last minute motion to dismiss the indictment. And I think it's understandable that the government, when it noticed that this statement had been made, and that it was most plausibly read to indicate consciousness of guilt, I think it's understandable that the government would bring it in. And if I could just finish the point I was going to make before, I'm not... Our position is not that PINA's attorneys in any way intended to incriminate him in this motion to dismiss the indictment. I think they just... It was an unguarded moment in which they essentially acknowledged consciousness of guilt. I think it's similar to the Harris case from the Seventh Circuit. There you had a defense attorney go out to talk to a witness in an effort to substantiate a mistaken identity theory. He presented the witness with a photo of the defendant and the defendant's brother. And this gambit essentially resulted in the witness confirming that the defendant, the client, was guilty. The same thing happened there. Did the government, in response to the attorney's representations to the court about his intention as to whether it was an omission, did the government respond? We can find in the record the government's response to that argument. I'm not sure, Your Honor. I think there was a surreply on... The reason that concerns me is that you say we can just assume the district court impliedly made the judgment about how to characterize it, but there's nothing indicating that the district court did do that other than its ruling. Well, yes, but I think it's necessarily implicit in the ruling. Well, we don't... Typically, if there's a disputed point and one way of resolving dispute is by making a legal error and one is not, I'm not sure that the right way to do it is just assume the judge had to have gotten it right. One reason we do that is when the government has made the correct legal argument to the district court in response, there's more reason to assume that the district court impliedly accepted the good argument. But if there was no response, my concern is that the government may have misled the district court or given the district court reason to think that it didn't need to make that characterization judgment, that even if the lawyer was correct in saying what his intention was, still it was admissible. That would be a big problem. I think, Judge Barron, I think the court quite explicitly adopted the government's characterization, because if we're wrong about this, then this was not evidence of consciousness of guilt at all. And the district court clearly said that, and it gave a very helpful instruction on consciousness of guilt. I think it's at 970 of the appendix. So if the district court were laboring under a different understanding of what the statement meant, then none of that makes sense in our view. Well, the relevant thing is whether the district court properly accounted for the representation by the attorney about the intention. Yes, and the district court clearly heard Mr. Pina's attorneys, their understanding of what the statement meant. If you look at 1049 to 51 of the appendix. If I'm hearing you, it's not clear that the government said that you had to make a judgment about whether to accept that characterization by the attorney or not, as opposed to it's irrelevant what the attorney says his intention was. Well, I think there's only one reasonable interpretation of this statement, so I resist the premise. Judge Kelly? Just two points. Counsel, I understand you to say that it was not the intention of the defense attorney to make an admission. In fact, it was just an unguarded moment, is what I have your statement as. But if that's the case, then isn't it true that it's not intended to be an assertion of the defendant? I think when I said, Your Honor, that it was not intended as an admission, I meant that it was not intended as an admission harmful to their client. But it was clearly intended as an assertion within the very broad definition of statement under Rule 801. The other thing I want to take a moment on is you described it as a hail Mary attempt, this motion to dismiss at the last minute. But wasn't that prompted by the late disclosure by the government on the Friday before trial regarding that information? I don't know much about the context of why this information was disclosed late because But you do know it was disclosed late and it was the Friday before, so it's not as if this motion could have been made sooner. I don't know if any deadline was missed, Your Honor. I really know nothing about that issue because it hasn't been briefed at all or come up earlier. So I don't know whether there was anything improper or incorrect about the government's timing on the disclosure. How do you know it was a hail Mary then? Well, because of the strength of the government's case. Why did it need this statement from defense counsel's motion if it was a strong case? Well, that goes to my response to Judge Lynch earlier. I can't get inside the heads of the trial counsel here, but I think they wanted to put on the strongest case possible. And they noticed the statement. They probably didn't have a lot of time to deliberate about whether and how to bring it in. But I do think it's understandable that they did so here. And I think that the rules made it admissible. Thank you. Martin Weinberg on reply. Thank you, Your Honor. First, in terms of the Millman evidence, it's at Appendix 879-280. Defense counsel made an offer of proof that Mr. Millman would testify that Mr. Pena Neves was looking for properties to buy, purchased an apartment in 2019. He has personal knowledge that he lived there and that he sold the apartment in 2021 and bought a house in North Miami. The court at 880 struck the evidence because it was irrelevant. In terms of the argument by Mr. Raboio on final argument, he did focus on the difference between February 6th and April 1, saying comparing it to drunk driving on February 6th does not mean that there's the same conduct on April 1. And he urged the jury to completely disregard, find it irrelevant. The argument that it doesn't matter, that this is only relevant, the attorney's statement would only further the motion to dismiss if it was true, is belied. It's a question of what did the government perceive. If they're perceiving that the defendant wants to plead guilty and is fearing jail, they're going to harden their plea bargain in position. If they instead sense that the defendant is going to go to trial, then they may offer a better plea. That's been the lawyer's experience. That's what Mr. Raboio said right after the statement. When you look at the statement in the context of the argument, it is packaged between legal arguments and it is no way an unconditional representation. And the rules of evidence limit 801 to a statement of the declarant, Mr. Raboio, that's intended to make the argument. If this was just paraphrasing an informant, it would have nothing to do with the purpose of the admission, which is consciousness of guilt. Finally, the judge did instruct honor about April 1. That was the date where they needed to find an intention to exercise dominion and control. And finally, the briefs of the appellant did argue that under the jurisprudence of this court, if there was a conflict and not an inquiry, that it's whether or not it adversely affected the performance of counsel rather than going to the different harmless error formulations for either evidentiary or constitutional error. Thank you.